UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHARD NORMAN | CIVIL ACTION NO. 3:14-CV-367 |
| VERSUS | JUDGE JOHN W. deGRAVELLES |
| H&E EQUIPMENT SERVICES, INC.; E.I. DU PONT DE NEMOURS; and MANITOWOC CRANES, INC. | MAGISTRATE JUDGE STEPHEN C. RIEDLINGER |

**ORDER**

Before the Court is Defendant E.I. DuPont De Nemours and Company's (hereinafter "DuPont") Motion Under Rule 12(b)(2) To Dismiss, or Alternatively, To Transfer, For Lack of Personal Jurisdiction Over DuPont; or, Alternatively, Motion Under 28 U.S.C. Section 1404 to Transfer Venue. (Doc. 5.) Plaintiff has opposed this Motion. (Doc. 8.) Defendant has filed a Reply Memorandum. (Doc. 11.) No oral argument is necessary.

Considering the foregoing, for the reasons set forth below, Defendant's Motion to Dismiss is denied. Defendant's Alternative Motion to Transfer Venue is granted.

**I.     Procedural History**

Plaintiff filed a Petition for Damages in state court seeking damages for injuries suffered on September 6, 2013 when a crane's jib allegedly malfunctioned and pinned the plaintiff against the crane. (Doc. 1.) Plaintiff named as one of the defendants H & E Equipment Services, Inc. (hereafter, "H & E") a Delaware corporation with its principal place of business in Louisiana. (Doc. 10-2, p. 2) Plaintiff alleges that H & E sold and/or leased and/or maintained the crane at issue. Plaintiff alleges various negligent and grossly negligent acts collectively against all of the defendants: failure to inspect, maintain, and repair the crane; failure to warn of the crane's hazardous condition; failure

1

to train and/or supervise their employees; failure to comply with applicable safety standards and OSHA regulations; and defectively designing and/or manufacturing the crane. (Doc. 10-2, p. 3.) Defendant DuPont removed the case to this court asserting subject matter jurisdiction under 28 U.S.C. § 1332, specifically alleging that the citizenship of H& E should be ignored because it was improperly joined. (Doc. 1,p. 3.) Thus, DuPont argued, 28 U.S.C. § 1441(b), which prohibits removal of an action which has as a defendant a citizen of the state in which the action is brought, is not applicable in this case. (Doc. 1, p. 11.) Defendant DuPont argued that the plaintiff's conclusory and non-specific allegations concerning H & E's negligence failed to demonstrate any reasonable basis for recovery from H & E under Louisiana law. (Doc. 1, p. 6.)

Plaintiff moved to remand, arguing that H & E was not improperly joined and that DuPont could not show that there is no possibility of establishing a cause of action against it. (Doc. 10.) Magistrate Judge Riedlinger recommended that Plaintiff's Motion be denied, finding that Defendant H&E Equipment was improperly joined, and thus its citizenship could be disregarded for the purpose of determining whether diversity of citizenship exited between the parties. (Doc. 15, p. 6.) No objection to or appeal of Magistrate Judge Reidlinger's Report and Recommendation was filed by Plaintiff. This Court adopted the Report & Recommendation of Magistrate Judge Riedlinger, denying Plaintiff's Motion to Remand. (Doc. 20, p. 1.)

**II.   Background**

On September 6, 2013, Plaintiff was injured while working on a crane in La Porte, Texas, on the premises of a chemical plant owned by DuPont. (Doc. 1.) The crane was allegedly manufactured by Defendant Manitowoc. (Doc. 1.) DuPont acquired the crane in question from a non-party to this action, Grove U.S., LLC, who is a citizen of Wisconsin. (Doc. 5-6, pp. 1-4.) The

2

crane was delivered by Grove U.S., LLC, to DuPont's La Porte, Texas facility. (Doc. 5-6, p. 3.)

DuPont is a Delaware corporation with its principle place of business in Delaware. (Doc. 5-1, p. 2.) Globally, DuPont operates plants in more than 90 countries. (Doc. 8-2, p. 1.) In Louisiana, DuPont operates three plants: one in Burnside, one in LaPlace, and one in Plaquemine. (Doc. 8-1, p. 1.)

Prior to this accident, DuPont contracted with H&E to provide maintenance and repair of the crane involved in the accident giving rise to this suit. (Doc. 5, p.2.) H&E is a Delaware corporation with its principal place of business in Louisiana. (Doc. 10-2, p. 2.) All maintenance and repair work performed on the subject crane was done by H&E at DuPont's LaPorte, Texas facility. (Doc. 5-1, p. 2.) No work was performed in Louisiana. (Doc. 5-7, stating that all work was performed in La Porte, Texas.) H&E's responsibility for maintenance of the crane ended on June 1, 2013, three months before the subject accident. (Doc. 5-7, p. 3-4.)

## II.  Law and Analysis

When a nonresident defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). To withstand a Rule 12(b)(2) motion, a "plaintiff need only present a *prima facie* case of personal jurisdiction to satisfy its burden." *Id*.

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Id*. A court determines the existence of personal jurisdiction over a nonresident defendant by examining the "(1) assertion of jurisdiction

by the law of the forum," and "(2) conformity of the law with the Constitution." *Pedalahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Id*.

In a diversity action, a federal district court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. Fed. R. Civ. Proc. 4(e)(1); *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001). Pursuant to La. Rev. Stat. § 13:3201, Louisiana's long-arm statute, courts are permitted to exercise personal jurisdiction over non-residents consistent with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *A & L Energy, Inc. v. Pegasus Group*, 791 So.2d 1266, 1270 (La. 2001). A court's exercise of personal jurisdiction over a non-resident defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play ans substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, the Plaintiff alleges that this Court has both specific and general jurisdiction over DuPont. (Doc. 8.) "Specific" jurisdiction, sometimes referred to as "case-linked" or "conduct-linked" jurisdiction, requires an "affiliatio[n] between the forum and the underlying controversy." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). By contrast, "general" or "all purpose" jurisdiction permits a court to assert jurisdiction over a defendant based on forum connections unrelated to the underlying suit. *Id*. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes

jurisdiction." *Id*. (citation omitted).

In deciding whether there is personal jurisdiction, the Court should first determine whether the connection between the forum and the circumstances giving rise to the suit can justify the exercise of specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, fn. 20 (2014).

### A.     Specific Jurisdiction

Plaintiff's argument that this Court has specific jurisdiction over DuPont can rest on only one factor: DuPont's contract with a Louisiana company (H&E) which maintained and repaired the subject crane. Plaintiff has pointed to no other conduct by DuPont in Louisiana that is related to Plaintiff's accident.

Although DuPont contracted for the maintenance and repair of the crane with this Louisiana company, H&E's employees performed all of their work on the crane in DuPont's LaPorte, Texas facility. (Doc. 5, p. 2.) The contract ended several months before the accident. (Doc. 5, p. 2.) Two recent Supreme Court cases addressing specific jurisdiction, *Goodyear, supra*, and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), mandate a finding that this single contact is insufficient to give this Court specific jurisdiction.

To the extent that Plaintiff is arguing that H&E's contacts with Louisiana are relevant in measuring DuPont's contacts with the state, this argument must fail. "We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (*or third parties*) and the forum. *Walden v. Fiore*, 134 S. Ct. At 1122 (emphasis added).

This only leaves the contract itself. "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other

party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1085) (emphasis added). While the Court in *Burger King* emphasized that other factors leading to or following the contract (e.g. the negotiations and the parties' actual course of dealing under the contract) might provide additional contacts sufficient to subject the defendant to the jurisdiction of the forum state, Plaintiff has produced no evidence in this regard. Rather, it is the fact of contract *alone* upon which Plaintiff relies and this is simply not enough, especially given the uncontradicted evidence that the performance of the contract occurred in Texas.

### B. General Jurisdiction

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) is the Supreme Court's most recent decision on "general" or "all purpose" jurisdiction.

In *Daimler*, Plaintiffs' Complaint alleged that during Argentina's "Dirty War," which spanned from 1976-1983, Daimler's Argentinian subsidiary, Mercedes-Benz Argentina (MB Argentina) collaborated with state security forces to kidnap, detain, torture and kill certain MB Argentina workers, among them, plaintiffs or persons closely related to plaintiffs. *Id*. at 751. The *Daimler* case concerned the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside of the United States. *Id*. at 750.

The Court re-articulated the standard for general jurisdiction as follows: "A court may assert general jurisdiction over foreign corporations...to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754, quoting *Goodyear*, 131 S. Ct. at 2851.

Only a "limited set of affiliations with a forum will render a defendant amenable to all-

purpose jurisdiction there." *Diamler*, 134 S. Ct. at 760. That "limited set" of affiliations includes the corporation's place of incorporation and its principle place of business. *Id*.

*Daimler* made clear that it was *not* holding that "a corporation may be subject to general jurisdiction only where it is incorporated or has its principle place of business." *Id*. "We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principle place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at fn. 20 (internal citation omitted).

In measuring whether the corporation's affiliations with the State are sufficient to impose general jurisdiction, the inquiry does not focus merely on the magnitude of the defendant's in-state contacts." "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id*.[1]

Measuring the contacts of Diamler and its American subsidiary and distributor,[2] the Court found that the defendants' affiliations were insufficient to justify general jurisdiction over them. Despite the fact that Daimler's American distributor was the largest supplier of luxury vehicles to the California market (accounting for 10% of Daimler's new vehicle sales in the U.S. and 2.4% of Daimler's worldwide sales), the Court found that this was not enough to justify California asserting general jurisdiction over them. *Id*. at 752.

In the case presently before the Court, unlike *Daimler*, there is no subsidiary or distributor to be considered. *Id*. DuPont's contacts with Louisiana involves the operation of three plants: one

---

[1] Justice Sotomayor, while agreeing with the result, disagreed with this test that required a new and unfounded "proportionality requirement." *Id*., 134 S. Ct. at 770.

[2] While the majority does not state explicitly that it was proper for the Court to measure a parent's contacts with the forum state by utilizing the contacts of its distributor/subsidiary, the Court seems to assume that this is proper. See Justice Sotomayor's concurring opinion, *Daimler*, 134 S. Ct. At 769.

in Burnside, one in LaPlace, and one in Plaquemine. (Doc. 8-1, p. 1.) Globally, DuPont operates plants in more than 90 countries. (Doc. 8-2, p. 1.) The total number of plants owned and operated by DuPont is unknown, but even assuming DuPont owned and/or operated only one plant in each of the 90 countries in which it operates, the three plants operated in Louisiana would make up only three percent of its worldwide operations. This is not enough to justify Louisiana asserting general jurisdiction over DuPont.

It is clear that DuPont has neither of the two "paradigm" affiliations with Louisiana since it is not incorporated here nor is Louisiana its principle place of business. In looking at the operations of DuPont both in and out of Louisiana, the Court finds that its operations are not, when measured by the standard set out in *Daimler*, sufficient for this Court to impose general jurisdiction over it.

### D. Additional Discovery

Plaintiff argues that it should be allowed to conduct additional discovery before the Court rules on Defendant DuPont's Motion. (Doc. 8, p. 15.) Discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. *Wyatt,* 686 F.2d at 284. Where the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted. *Id*., citing 4 Moore's Federal Practice P 26.69 at 26-504; Note, Discovery of Jurisdictional Facts, 59 Va. L. Rev. 533, 546 (1973). The Fifth Circuit has affirmed denials of discovery on questions of personal jurisdiction in cases where the discovery sought "could not have added any significant facts." *Id*, citing *Washington v. Norton Mftg.*, *Inc.*, 588 F.2d 441, 447 (5th Cir. 1979), cert. denied, 442 U.S. 942.

This is such a case. The Motion to Dismiss filed by Defendant does not raise any questions

of fact, and discovery will not add any significant facts. The lack of personal jurisdiction is clear and discovery would serve no purpose. Therefore, Plaintiff's request for an extension of time to conduct additional discovery is denied.

### E. Transfer of Venue

Having found no personal jurisdiction over DuPont, the Court is empowered to dismiss the Plaintiff's case against it. "In the alternative, a federal court is authorized under 28 U.S.C. § 1406(a) to transfer the action to 'any district where it could have been brought'" if the Court finds that it is "in the interest of justice to transfer the action." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (2013).

DuPont has moved in the alternative to transfer under 1404(a). (Doc. 5.) The factors involved favor transfer under both 1406(a) and 1404(a). Section 1404(a) of Title 28 allows the Court in its discretion to transfer venue to another district or division, "[f]or the convenience of parties and witnesses, in the interest of justice," where the action might have been brought. 28 U.S.C. § 1404(a). *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001). Further, the court can transfer venue under § 1404(a) even if it lacks personal jurisdiction. *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111-112 (2d Cir. 2001).

The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). DuPont seeks to transfer this case to the Southern District of Texas, Houston Division. (Doc. 5-1, pp. 13-14.) Under 28 U.S.C.A. § 1391(b)(2), a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. In a tort case arising out of

9

an injury-causing accident, the district where the accident giving rise to the injury occurred is the district where a substantial part of the events or omissions giving rise tot he claim occurred. *Smith v. Fortenberry*, 903 F. Supp. 1018, 1020-21 (E.D. La. 1995); *Gray Cas. & Sur. Co. v. Lebas*, 2013 WL 74351, *2 (E.D. la. 2013). In the present case, the undisputed facts as discussed above show that a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of Texas. Therefore, venue is proper in that district pursuant to 28 U.S.C.A. § 1391(b)(2).

In *Volkswagen*, the Fifth Circuit considered the role that the plaintiff's choice of venue plays when considering transfer under § 1404(a) is less demanding than the heavy burden the movant bears under the doctrine of *forum non conveniens. Id.* at 314, and fn. 10. Under § 1404(a), if a defendant shows that the venue to which transfer is sought is clearly more convenient than the venue chosen by the plaintiff, the district court should transfer the action. *Id.* at 315. The *Volkswagen* Court cautioned the district court against "giving inordinate weight to the plaintiff's choice of venue." *Id.* at 314-15. Where the plaintiff is a nonresident of the chosen venue, or the operative facts underlying the plaintiff's action did not occur there, the plaintiff's choice should not be accorded substantial deference. *Apparel Production Servs., Inc. v. Transportes De Carga Fema, S.A. de C.V.*, 546 F. Supp. 2d 451, 453 (S.D. TX 2008). While it is true that Plaintiff's choice of forum and venue are to be given deference, this deference can be overcome when the private and public interest factors clearly point toward trial in the alternative forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981); *In re Volkswagen*, 545 F.3d at 315, fn. 2.

In considering a motion to transfer, the private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen*, 545 F.3d at 315. The public interest factors to be considered are (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

    A.    Private Interest Factors

        1.    Relative Ease of Access to Proof

When examining this factor, *Volkswagen* rejected the notion that document copying and storage technology rendered the factor of relative ease of access to proof unimportant. *Id*. at 316. The Court noted that the documents and physical evidence relating to the accident were located in Dallas, as was the accident site itself, and held that this factor favored transfer. *Id*.

In the present case, the physical evidence–the crane and plant–are located in La Porte, Texas. Further, there is no evidence to show that any records relevant to the Plaintiff's accident would be in the Middle District of Louisiana. Therefore, this factor favors transfer of venue.

        2.    Availability of Compulsory Process to Secure the Attendance of Witnesses

In *Volkswagen*, the court stated that non-party witnesses located where the accident occurred would be outside the chosen venue's subpoena power for depositions, and any trial subpoenas requiring witnesses to travel more than 100 miles would be subject to being quashed under Rule 45 of the Federal Rules of Civil Procedure. *Volkswagen*, 545 F.3d at 316. *Volkswagen* also considered the fact that a proper venue existed where subpoena power could be exercised existed. 545 F.3d at 316.

In the present case, Plaintiff was injured at the DuPont facility in LaPorte, Texas. Potential

witnesses to this accident presumably live and work in the LaPorte, Texas area, which is 254 miles from the Middle District of Louisiana and well outside of the subpoena power of this Court. A proper venue in which subpoena power can be exercised exists in the Southern District of Texas. This factor favors transfer to that Court.

### 3. Cost of Attendance for Willing Witnesses

In *Volkswagen*, the Court referenced the "100-mile threshold" under which the court considers the inconvenience to witnesses to increase in direct relationship to additional distance when the venue chosen by the plaintiff and the proposed venue under § 1404(a) are more than 100 miles apart. *Id*. at 317. The Fifth Circuit stated that it is "an obvious conclusion that it is more convenient for witnesses to testify at home," and that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*.

In this case, Plaintiff is a resident and citizen of Texas, his co-workers who were eyewitnesses to the accident are likely located in Texas, and the KBR and DuPont employees who dealt with the crane involved in the accident would be located in Texas. Requiring these witnesses to appear in court in Baton Rouge, Louisiana, which is 254 miles from LaPorte, Texas, wold cause them to suffer monetary costs as well as the personal costs associated with being away from work, family, and community. This factor favors transfer to the Southern District of Texas.

### 4. Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The final private interest factor to be considered is practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen*, 545 F.3d at 315. There is no reason to believe that the trial of this matter would be easier, more expeditious, and less expensive when tried in Baton

Rouge, Louisiana, than it wold be when tried in Houston, Texas, which is closer to the location where the accident occurred and the witnesses who are most likely to testify. This factor weighs in favor of transferring this case to the Southern District of Texas.

      B.      Public Interest Factors

The Court now turns to the public interest factors to be considered in determining whether a transfer of venue is appropriate in this case: (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

      1.      Administrative Difficulties Flowing from Court Congestion

Defendant does not argue that this factor favors transfer of venue, and admits that it has not conducted a comparative analysis of the docket congestion between the Middle District of Louisiana and the Southern District of Houston, Texas. (Doc. 5-1, p. 21.) This Court is unaware of how its case load compares to that of the Southern District of Texas. Therefore, the Court is unable to determine whether this factor favors transfer.

      2.      Local Interest in Having Localized Interests Decided at Home

This factor inquires as to whether the residents of the venue chosen by the plaintiff "have an interest – that is, a stake – in the resolution of his controversy." *Volkswagen*, 545 F.3d at 318. In *Volkswagen*, the Court held, "they do not, as they are not in any relevant way connected to the events that gave rise to this suit. In contrast, the residents of the Dallas Division have extensive connections with the events that gave rise to this suit." *Id.*

Similarly, the events that give rise to this suit have little relevant connection to the Middle

District of Louisiana, and therefore the Middle District's residents have little interest or stake in having this case decided here. In contrast, as the events giving rise to this suit occurred in the Houston Division of the Southern District of Texas, its residents have an interest and stake in the resolution of this case. This factor favors transfer of this case to the Southern District of Texas.

        3.        Familiarity with Governing Law, and

        4.        Avoidance of Problems with Conflict of Laws or Application of Foreign Law

To determine which state's substantive law applies to such issues as liability and causation relating to Plaintiff's claims against DuPont, this Court would apply Louisiana's conflicts of law statutes. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Article 3545 of the Louisiana Civil Code addresses conflicts of law issues relating to conduct and safety and provides:

> Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state...

La. Civ. Code art. 3543.

In the present case, both the conduct that alleged caused Plaintiff's injury, and the injury itself, occurred in Texas, not in Louisiana. Thus, Texas substantive law will apply to Plaintiff's claims against DuPont. This Court is not as familiar with the nuances of Texas law as is the Southern District of Texas, Houston Division. This factor weighs in favor of transfer to the Southern District of Texas, Houston Division.

As seven of the eight factors weigh in favor of transferring this matter to the matter to the Southern District of Texas, Houston Division, the Court so orders the same.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's Motion to Dismiss (Doc. 5) is **DENIED**.

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's Alternative Motion to Transfer Venue (Doc. 5) is **GRANTED.**

Accordingly, **IT IS ORDERED, ADJUDGED AND DECREED** that this case be transferred to the Southern District of Texas, Houston Division.

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff's request for extension of time to conduct additional discovery is **DENIED.**

Signed in Baton Rouge, Louisiana, on March 20, 2015.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**