UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD NORMAN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-765 |
| § | |
| H&E EQUIPMENT SERVICES INC, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER

Before the Court is Defendant E. I. Du Pont de Nemours and Company's ("DuPont") [First] Motion for Summary Judgment (Doc. #53), Defendant's Supplement to Motion for Summary Judgment (Doc. #58), Plaintiff Richard Norman's Response (Doc. #62), and Defendant's Reply (Doc. #65). Also before the Court is Defendant's [Second] Motion for Summary Judgment (Doc. #85), Plaintiff's Response (Doc. #88), and Defendant's Reply (Doc. #93). Having considered the arguments and the applicable law, the Court grants summary judgment to Defendant.

### I. Background

On September 6, 2013, Norman was injured while working on a crane in La Porte, Texas, on the premises of a chemical plant owned by DuPont. Doc. #88 at 2. The crane's jib malfunctioned, and the jib rolled and pinned Norman against the crane. *Id.* As a result, Norman sustained injuries to his neck, shoulder, and back. *Id.* DuPont leased the crane, a Grove RT600E, from Grove U.S., LLC "(Grove"). *Id.* Grove is an indirect wholly owned subsidiary of the Manitowoc Company, Inc. Doc. #85 at 4; Doc. #92.

Norman worked for Kellogg Brown & Root, LLC ("KBR"), an independent contractor

hired by DuPont to perform construction and maintenance at its facility in La Porte. Doc. #85 at 2. The agreement between DuPont and KBR provided that KBR would "supervise, coordinate, and direct" its work and was "solely responsible for and [would] have control over construction means, methods, techniques, sequences, procedures, and coordination" of all portions of its work. *Id.* at 3. In a section entitled "Independent Contractor," the agreement provided that "[t]he employees . . . methods, facilities, and equipment used by [KBR] to perform [s]ervices shall be at all times under [KBR's] exclusive direction and control. DuPont shall not control nor have any responsibility or liability therefore." *Id.* KBR was also responsible for the safety of its employees under the agreement. And if DuPont provided equipment to KBR, KBR was responsible for determining the suitability and condition of the equipment and was to instruct its employees in the proper operating procedures of said equipment. *Id.* The equipment was provided "as is, where is, and without any warranty expressed or implied." *Id.*

On the day of the accident, Norman and a KBR crane operator, Kevin Meadows, were stowing the crane's jib to drive it over to a pond within the DuPont facility. *Id.* at 7. They were going to use the crane to remove an Air Jet machine from a biotreatment basin for maintenance purposes. *Id.* But while Norman was stowing the jib, he pushed the rear stowage bracket handle of the crane in, which caused the crane to come down on top of him and injure him. *Id.* DuPont did not supervise Norman's work on a daily basis, and no DuPont employees were observing or supervising Norman at the time of the accident. *Id.* at 5. DuPont did not control the details of the crane stowage process or have specific procedures regarding boom extension stowage. *Id.*

Norman alleges that Grove, the crane's manufacturer, defectively designed the crane with the rear stowage bracket handle in a place that caused him to be "in the line of fire." *Id.* at 8-9. And Norman alleges that DuPont, the owner of the crane and the premises, failed to recognize

2

that the crane was dangerous. *Id. See also* Doc. #83 at 3.

But Norman admits that he knew about the alleged dangerous condition of the crane—the location of the rear stowage bracket handle—from the first time he saw the crane in 2011 or 2012. Doc. #85 at 9. Norman had worked with the crane "a lot" before the accident and had stowed the jib on more than one occasion. *Id.* He did not tell anyone about this problem with the crane. *Id.*

Originally, Norman filed this lawsuit in state court in Louisiana. Doc. #27. Then Defendants removed the case to federal court in the Middle District of Louisiana. *Id.* But the Middle District of Louisiana found that it lacked personal jurisdiction over the action and transferred the case to the Southern District of Texas. Now, DuPont moves for summary judgment on Norman's claims.

## II. Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of

material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III. Analysis

DuPont moves for summary judgment on several grounds. First, DuPont argues that Norman's claim is barred by Workers' Compensation. Doc. #53. Second, DuPont argues that it had no legal duty toward Norman. Doc. #85. Finally, DuPont argues that it is immune from liability under Section 95.003 of the Texas Civil Practice and Remedies Code. *Id.* The Court

finds that DuPont had no legal duty toward Norman and therefore does not reach the other arguments for summary judgment.[1]

As an initial matter, the Court will apply Texas law to this case. In deciding choice-of-law issues, Texas courts follow the Restatement (Second) of Conflict of Law's "most significant relationship" test. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012) (citations omitted). Here, Plaintiff Richard Norman is a citizen of Texas and his injury occurred at DuPont's facility in La Porte, Texas. The Court is satisfied that Texas has the most significant relationship to this controversy. The parties have not disputed the application of Texas law to this case.[2]

It is undisputed that Norman was an employee of KBR and that KBR was an independent contractor of DuPont. Therefore, whether DuPont owed Norman a duty of care is governed by Texas law concerning a premises owner's duties to an independent contractor's employees. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002).[3] In that context, there are two categories

---

[1] Norman asks the Court to defer ruling on the summary judgment motions until after discovery has been completed. Doc. #88 at 11. But Norman does not specify what additional discovery would add here. The key elements of DuPont's summary judgment motion are based on the contracts between DuPont and KBR and on Norman's own testimony. That evidence is already before the Court, and Norman has not disputed it. Additional depositions of Defendant's fact witnesses will not alter the grounds on which this Order is based.

[2] This case was transferred to this Court from the Middle District of Louisiana because the Middle District of Louisiana found that it lacked personal jurisdiction over the parties. Doc. #27 at 9. Where a diversity case is transferred for lack of personal jurisdiction, the transferee court applies the choice-of-law rules of the state in which it sits. *Eurocopter*, 692 F.at 408 n.3. That is distinct from a case where transfer is based on convenience, in which case the law of the transferor court applies. *Id.* Here, because the transfer was based on a lack of personal jurisdiction, the Court applies the choice-of-law rules of the state in which it sits—Texas. In addition, the Middle District of Louisiana found that even under Louisiana conflict-of-law principles Texas law should govern this action. Doc. #27 at 14.

[3] *Dow* concerned a general contractor's duties to a subcontractor's employees. 89 S.W.3d at 605-

5

of premises defect cases: (1) defects existing on the premises when the independent contractor entered; and (2) defects the independent contractor created by its work activity. *Id.* at 606 (citing *Coastal Marine Serv. of Texas, Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999) (per curiam)).

### A. Defects Existing on the Premises

Under the first subcategory of premises defects—those existing when the independent contractor entered—the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist. *Coastal Marine*, 988 S.W.2d at 225 (citations omitted). Premises defects of this type are ones "in which the danger did not arise through the work activity of the subcontractor/invitee." *Shell Chemical Company v. Lamb*, 493 S.W.2d 742, 746 (Tex. 1973). Only concealed hazards—dangerous in their own right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects. *Coastal Marine*, 988 S.W.2d at 225. For example in *Smith v. Henger*, 226 S.W.2d 425, 431-33 (1950), the Texas Supreme Court found that an open shaft with inadequate warnings that was in existence when contractors entered the property was such a concealed defect. By contrast, if a preexisting condition is open and obvious, it is the independent contractor's duty to warn its employees or make the condition safe; the owner is not liable to a contractor's employee for injury arising from the condition. *See General Elec. Co. v. Moritz*, 257 S.W.3d 211, 215-16 (Tex. 2008) (concluding that loading ramp at warehouse which

---

06. By contrast, this case concerns a premises owner's duties to an independent contractor's employees. But as the *Dow* court noted, the duties are the same. *Id.* (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 n.1 (Tex. 1999) ("A general contractor owes the same duty as a premises owner to an independent contractor's employee.")).

lacked rails was an open and obvious condition, and thus it was independent contractor's responsibility to warn the injured employee or make the condition safe).

In *Coastal Marine*, an employee of an independent contractor was killed when his head was crushed in the "pinch point" area of a cane. *Id.* at 224. As here, Coastal Marine had hired the independent contractor, and Coastal Marine owned both the premises and the crane. The Texas Supreme Court found that Coastal Marine was not liable to the deceased employee for a concealed defect existing on the premises because "[t]he pinch point area on Coastal's crane . . . posed no danger until [independent contractor] put the crane into operation." *Id.* at 225. That meant that the crane was not a concealed hazard because it was not "dangerous in [its] own right and independent of action by another." *Id.*

Here, the facts are similar to those of *Coastal Marine*. The crane that injured Norman was not a concealed defect. It was not hazardous until Norman put it into operation. And Norman admitted that he had known about the alleged dangerous condition of the crane—the location of the rear stowage bracket handle—from the first time he saw the crane in 2011 or 2012. He had worked with the crane "a lot" before the accident and had stowed the jib on more than one occasion. Accordingly, because any alleged defect in the crane was open and obvious, it cannot be classified as a concealed defect, and DuPont cannot be held liable on that basis. *See Moritz*, 257 S.W.3d at 215-16.

### Necessary-Use Exception

Even if the defect was open and obvious, Norman argues that DuPont still owed him a duty under the "necessary-use" exception to the no-duty rule because Norman had no choice but to use this particular crane on DuPont's premises. Doc. #88 at 7.

Under the "necessary-use" exception to the general no-duty rule, a premises owner may owe a duty to an invitee if the invitee has no choice but to use the dangerous premises, open and obvious though the danger may be. This exception "recognizes a landowner's duty to make its premises safe when, despite an awareness of the risks, it is necessary that the invitee use the dangerous premises and the landowner should have anticipated that the invitee is unable to take measures to avoid the risk." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 208 (Tex. 2015) (citing *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 521 (Tex. 1978)). For example in *Parker*, a landowner was found liable for a tenant's injuries under the necessary-use exception where the landowner mis-set a timing device that turned on the lights in an enclosed stairway of an apartment building, darkening the tenants' only way down. 565 S.W.2d at 514.

However, the Texas Supreme Court has rejected the "necessary-use" exception in the independent contractor context. *See Moritz*, 257 S.W.3d at 216-19. In *Moritz*, the court distinguished the landowner-tenant relationship in *Parker* from the owner-independent contractor relationship because of the independent contractor's specialized expertise:

> Unlike other invitees, independent contractors are hired for special projects that often entail special expertise, and can be expected to use whatever equipment or precautions are necessary so long as a hazard is not concealed. If Moritz wanted to use bungee cords and lean over backwards, that was his business; but he could not require GE to keep him safe no matter how he chose to do his own work.

*Moritz*, 257 S.W.3d at 216-19. So here, even if Norman was forced to use DuPont's crane, he cannot take advantage of the necessary-use exception because it does not apply to independent contractors in this context.

## B. Defects The Independent Contractor Created By Its Work Activity

Now, the Court turns to the second subcategory of premises liability—when the dangerous condition arises as a result of the independent contractor's work activity. Under this subcategory, the premises owner normally owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work in a safe manner. *Coastal Marine*, 988 S.W.2d at 225-26 (citations omitted). However, a premises owner may be liable when the owner retains the right of supervisory control over work on the premises. *Id.* at 226 (citations omitted). In determining whether an owner has retained this right to control, the standard is narrow. The right to control must be more than a general right to order work to stop and start, or to inspect progress. *Id.* (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985)). The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner. *Id.* (citations omitted). A party can prove the "right to control" in two ways. First, by evidence of a contractual agreement that explicitly assigns the premises owner the right to control. *Id.* (citing *Olivo*, 952 S.W.2d at 528; *Redinger*, 689 S.W.2d at 418). Second, in the absence of a contractual agreement, by evidence that the premises owner exercised actual control over the work. *Id.*

In *Coastal Marine*, the court found no liability under this subcategory of premises defect because no contractual agreement assigning control rights between the parties existed and there was no actual control since no Coastal Marine employees directed work on the job site when the accident occurred or at any other time. *Id.*

Here, as in *Coastal Marine*, DuPont exercised no actual control over Norman. No DuPont employees were directing work on the job site when Norman was injured or at any other time. In

9

addition, unlike in *Coastal Marine*, a written contract assigned the right to control the work to KBR. The contract provided that KBR would supervise, coordinate, and direct its work and was "solely responsible for and have control over construction means, methods, techniques, sequences, procedures, and coordination of all portions" of its work. Doc. #85 at 3. Accordingly, DuPont cannot be held liable for Norman's injuries under this subcategory of premises liability.

Because the Court finds that DuPont owed no duty to Norman, it does not reach the question of whether this action is barred by Workers' Compensation or by Section 95 of the Texas Civil Practice & Remedies Code.

## IV. Conclusion

For the foregoing reasons, DuPont's Motion for Summary Judgment is GRANTED. Norman's claims against DuPont are dismissed WITH PREJUDICE.

It is so ORDERED.

**MAR 2 1 2016**
Date

THE HONORABLE ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE